## Case No. 3,680.

### DAY v. HARTSHORN.

[See Case No. 3,683.]

## Case No. 3,681.

### DAY v. HARTSHORN.

[The case digested under above title in Law, Pat. Dig. 332. 393, 468, is evidently the same as Case No. 3,683.]

## Case No. 3,682.

### DAY v. HARTSHORN.

[The case digested under above title in Law, Pat. Dig. 397, is evidently the same as Case No. 3,683.]

## Case No. 3,683.

### DAY v. HARTSHORN.

[3 Fish. Pat. Cas. 32.][1]

Circuit Court, D. Rhode Island. Nov. Term, 1855.

INFRINGEMENT OF PATENT—VERDICT AS FOUNDATION FOR INJUNCTION—LICENSEES.

1. Where a case has been tried at law, with a verdict for the plaintiff, and a motion for a new trial is made, it is the practice to refuse an injunction until after the determination of the motion.

2. A bill of exceptions and a writ of error sued out, should have the same effect as a motion for a new trial, upon an application for an injunction, though either may be disregarded by the judge if his conscience is satisfied.

3. Neither the verdict at law nor finding of the jury, in a feigned issue, are ever conclusive

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

upon the judge sitting in equity, upon a motion for an injunction.

4. It would not follow that a judge ought to grant an injunction, although he might not set aside the verdict of the jury. In the one case the jury are the judges of the facts, in the other the chancellor must judge for himself.

5. Where a licensee undertakes to use a patent without paying the license fee, whether the license thereby becomes voidable at law or not, equity will so far enjoin him, that unless he will pay he shall not be allowed to use.

[Bill by Horace H. Day against Isaac Hartshorn for infringement of letters patent No. 16, granted to E. M. Chaffee, August 31, 1836.]

This was a motion for an injunction founded upon the verdict of the jury in a suit at law, between the same parties, which resulted in a verdict for the plaintiff. The case presented a state of facts essentially the same as that in Day v. Candee [Case No. 3676].

T. A. Jenckes and N. Richardson, for complainant.

J. S. Pitman, S. Ames, C. S. Bradley, and J. T. Brady, for defendant.

PITMAN, District Judge. Since the verdict, in this court, for the plaintiff, in the suit at law between these parties, a motion for an injunction has been again made by the plaintiff, and it has been urged upon the court that, after a verdict at law for the plaintiff in a patent cause, it was the imperative duty of a court of equity to grant an injunction, notwithstanding the pendency of a writ of error; and that such has been the invariable practice of the courts of the United States. On the other hand, it was contended that the legal rights of the parties had not been determined by the verdict, that grave questions of law were raised by the bill of exceptions, and that the court had a right to refuse the injunction, and ought to do so, until the determination of these questions by the supreme court of the United States, unless the court was satisfied that these questions were so clearly in favor of the plaintiff that the injunction should be granted, notwithstanding the writ of error.

It was admitted by the plaintiff's counsel, that where there was a motion for a new trial, the practice was not to grant an injunction until the determination of this motion, but contended that the pendency of a writ of error furnished no ground for a refusal to grant the injunction.

After the first hearing of this motion, to satisfy myself what was, or what should be, the practice in such a case, and it having been suggested by the counsel for the plaintiff that notwithstanding Judge Curtis declined to sit in this cause, there was no impropriety in my consulting him on the general question of practice, if I was so disposed, I did consult him, and also the presiding judge of the second circuit.

Judge Curtis referred me to the case of Many v. Sizer [Case No. 9,056], tried in the

Massachusetts district, before Judge Sprague, in which he was for the plaintiff. Judge Sprague charged the jury upon the law or the case, in conformity with the opinion of Judge Nelson in a trial of a cause before him, on the same patent. Exceptions to the charge of Judge Sprague were taken, with a view to carry the questions to the supreme court. After the verdict and judgment, a motion was made for an injunction before Judges Woodbury and Sprague—they differed as to the law, and the motion was refused. Neither judge considered that the verdict was conclusive. Judge Sprague, who was opposed to the injunction, said if the defendant should neglect to sue out or prosecute his writ of error, the application could be renewed.

Judge Curtis thought that a verdict and judgment, where there is a bill of exceptions, and a writ of error sued out, as the courts of the United States are organized, could not be distinguished from a verdict where there is a motion for a new trial, as respects the effect of a verdict upon a motion for a temporary injunction. Either the motion for a new trial or the writ of error may be disregarded by the judge, if his conscience is satisfied, but ordinarily neither should be, and, as he thought, the one no more than the other.

Judge Nelson said: "Where there has been a trial at law in a patent case before me, and the verdict for the plaintiff, if I am satisfied with the verdict, my practice is, if an application is made in the equity suit for an injunction, founded on the verdict, to grant it. But, if the verdict is not satisfactory, and the motion for the injunction is opposed, I invariably refuse it; and this, whether a motion for a new trial has been made before me in the suit at law or not. The trial at law having been before me, I claim to judge of the facts for myself, on the application for the further remedy of the injunction. I do not understand that the verdict at law, or finding in case of a feigned issue, is ever conclusive upon the judge, sitting in equity, on the application for the injunction."

After I had received these communications from these learned judges, it being suggested to me, by one of the counsel for the plaintiff, that the closing counsel, from a suggestion which I made to him at the hearing, was not heard upon one point so fully as he intended, I stated that I was willing to hear all that either party wished to say upon all the points, and the motion was then re-argued before me, upon all the points which they considered material, by both parties. At the close of this argument, one of the counsel for the plaintiff stated to me, that in the case of Day v. New England Car Co. [Case No. 3,686], pending in the southern district of New York, a motion for an injunction would be made and heard before, probably, I might be ready to deliver my opinion on

this motion. I considered this at least an intimation of a wish that I would suspend my opinion until that motion was determined, and was desirous of doing so, that I might have the benefit of the opinion of the two learned judges of that court upon some of the same questions which I had to decide alone. The motion in New York not having been heard as soon as the plaintiff's counsel expected, but having been put off until the latter part of September, I waited in the hope that I might then be enlightened by its determination; but that court having, in September, as I understand, refused to hear this motion for a preliminary injunction, and reserved all the questions involved in the same until the final hearing of the cause in equity, I am now obliged, after the further consideration which I have recently given to it, to express my opinion upon this motion.

Upon the trial of the case at law, the defendants not only set up all the defenses usually set up in patent causes, but denied the right of the plaintiff under the assignment from Chaffee, the patentee, as set up by him, on the ground that Chaffee had previously conveyed it to Judson, in trust for Goodyear and his licensees, under certain agreements, which still remained in full force. Upon the argument of this motion for an injunction, I stated that I saw no reason to be dissatisfied with the verdict as to the rights of Chaffee as inventor and patentee. Upon the part of the case connected with the agreements between Chaffee and Goodyear, and Chaffee and Judson, my doubts arose.

The verdict of the jury was a general verdict for the plaintiff upon the general issue; no questions were asked on what points the verdict was founded; if, therefore, there had been a motion to set aside the verdict, as against law and evidence, it could not have been done, if the verdict could have been sustained upon any point.

\*    \*    \*    \*    \*    \*    \*

Since the trial of the case at law, and the argument of this motion, I have had more doubts upon one of the leading points on which I charged the jury for the plaintiff, viz.: whether the agreements between Judson and Chaffee were revocable at law by Chaffee, by the non-performance on the part of Judson. I have no doubt that where a licensee undertakes to use a patent without paying for it the amount specified in the license, that equity will so far enjoin him, whether the license thereby becomes voidable at law or not, that unless he will pay he shall not be allowed to use. And these considerations induced me to order the conditional injunction which I did, when the bill in this case was first filed and the defendants presented so imperfectly their case before me. The views which I then took remained with me, and influenced me, no doubt, in the construction of the agreements on the trial. I do not say that my opinion

has entirely changed on this point, but it has been so much shaken by the learned arguments of the gentleman who closed this motion on the part·of the defendant, that I should not be satisfied that I had done right if I should disregard the writ of error, and grant the injunction.

But not having been satisfied with the verdict as to one part of the case, and having fully heard the parties upon all the points connected therewith, I deemed it proper to state my views in relation to the same. It was argued before me that if I was not satisfied with the verdict, yet if I would not have set it aside if a motion had been made for a new trial, that then I ought to grant the injunction. If I have the right in a court of equity to examine the evidence in a cause which is tried before me at law, and to draw my own conclusions when I am asked to grant an injunction, and ought to refuse it if I am not satisfied with the verdict, then, though I might hesitate to set the verdict aside, because I was not satisfied with the same, especially after the modern decisions on this subject, yet it would not follow that I ought to grant an injunction. The jury draw their own conclusions from the evidence, and it is their right so to do; and because I might not draw·the same conclusions, this of itself is not sufficient to justify me in setting the verdict aside if they have evidence to judge from. If I should do so, I should substitute myself as judge of the facts, in a trial at law, which the parties and the law have submitted to the jury. But when I am applied to in equity, where I am judge of the facts as well as law, and required to perform an act which calls upon me to draw my own conclusions from the evidence which I heard upon the trial, there my own judgment upon the law and the evidence must determine my action, and not the judgment of the jury. I will not set aside a verdict because I differed from the jury upon the evidence, because the verdict is theirs, and they act upon their conscience. But when I have to act upon my own conscience, then I can not suffer the jury to control me, in my province, for the same reason that I should deem it improper for me to control them in their province. There are cases where, though I might be dissatisfied with the verdict, yet not so much so but that I might think it proper to suffer the verdict to be the basis for an injunction. But such is not this case; and though I do not say whether I would or would not have set the verdict aside, if a motion had been made for a new trial, and ought not to say whether I would or would not, when I am not asked to do so, unless the verdict is imperative and conclusive upon me, as it is not, unless Judges Nelson, Curtis, Sprague, and the late Judge Woodbury, have been mistaken in the law and practice in the courts of the United States,

then I am called upon to act and draw my own conclusions, the same as if this evidence had been submitted to me on the trial of a bill in equity.

Another view was presented, at the argument, by the counsel for the defendant, to show that the verdict ought not to be conclusive, as settling the right of the plaintiff to an injunction: that the verdict can only settle legal rights, and can not control the court of chancery in the administration of equitable principles; and one of these is, that it will not enforce a forfeiture at law. Upon this point many authorities were cited. In the course of the argument, in order to show what relief was granted in the courts of the United States, where there had been a contract between the parties for the use of a patented machine, which was sought to be avoided in equity, for non-performance by the licensee, the cases of Brooks v. Stolley [Case No. 1,962] and Woodworth v. Weed [Id. 18,022] were referred to.

In the case of Brooks v. Stolley [supra], the plaintiffs applied to Judge McLean for an injunction to restrain the defendant from using a certain planing machine, claimed by the complainants under Woodworth's patent; the bill stated that they had granted a license to the defendant to run the same, upon paying one dollar and twenty-five cents for every thousand feet of boards he should plane, payable Monday of every week; that for a short time the defendant complied with the contract by making payment, but had failed to do so for some time, and had refused to do so, though he still continued to run the machine; and on this ground an injunction was prayed for. The defendant admitted the failure to make payment, and averred that the complainants had, in several respects, violated the contract on their part, and that he was deceived as to the import of certain parts of the contract. In the contract, the performance of its stipulations by the defendant was expressly made a condition to his continued use of the machine. In this case, Judge McLean said: "An injunction is prayed, which is, in effect, will annul the contract. Now, although it may be admitted that the defendant, as the facts of the case stand, could not successfully invoke in his behalf the action of a court of equity, or of law, yet under the relief asked by the complainants, a somewhat different view may be taken. Are the complainants entitled to an absolute injunction which shall annihilate the contract? It appears to me that short of this, adequate relief may be given. In this respect the case is altogether different from an ordinary case of infringement, where no contract has been made by the parties. In that case an absolute injunction is the only adequate relief; but in the case under consideration, the complainants have licensed the defendant to use the patented right under certain conditions. If the use go beyond these conditions, there is an infringement

which must stand on the general ground unaffected by the contract; and as to such an use the injunction should be absolute. On this ground the jurisdiction in this case is sustainable; and having jurisdiction, the court may decide other matters between the parties." In this case the court did not order an absolute injunction, but granted an injunction unless the defendant should pay the complainants according to his contract, and perform all the other conditions of his contract.

In the case of Woodworth v. Weed [supra], before Judge Nelson, the plaintiff filed his bill against the defendant, setting forth that as patentee, under the Woodworth patent, he entered into an agreement with the defendant whereby he granted to him a license to construct and use one of the Woodworth planing machines, for which the defendant agreed to give his promissory notes, in all amounting to four hundred dollars; two for fifty dollars each, and three for one hundred dollars each; payable at different and specified times; the defendants further agreeing that in case said notes were not paid when they or either of them fell due, then the said license and permission should be void, and the same should revert to said Woodworth. The bill set forth that the defendant constructed and ever since used said machine, and gave his notes, four of which, amounting to three hundred dollars, were due and unpaid. The bill stated that the license and permission to use the machine had become void, and that, according to the terms and conditions of the license, the defendant had no longer any right to use it, and prayed for an injunction to restrain its use. In this case, Judge Nelson said: "From the terms of the agreement, the license was forfeited the moment one of the notes became due and was unpaid, and it was optional with the plaintiff to resort to his remedy, at common law, to enforce the collection of the notes, or to treat the rights of the defendant as forfeited under the stipulation in the agreement." "The stipulation is to be considered as a double security given by the defendant to the plaintiff for the payment of the consideration money." In this case Judge Nelson did not grant the injunction prayed for in the bill absolutely, but made such an order as was made by Judge McLean in the case of Brooks v. Stolley [supra]. He made an order "granting the injunction unless the defendant within sixty days paid to the plaintiff the principal and interest due upon the notes mentioned in the bill which had fallen due, and the plaintiff's costs."

When the motion to dissolve the injunction in the case of Day v. New England Car Co. [supra], which had been granted by Judge Betts, was argued before the circuit court in New York, Judge Nelson referred to the case of Woodworth v. Weed [supra]. The injunction was dissolved by the consent of both judges, and all further proceedings suspended in the bill in equity, until the trial of the case at law. No reasons were stated by the court for the dissolution of the injunction. After a very long trial before Judge Betts, of the case at law, the death of one of the jury put an end to the trial before that jury, and no trial has yet been had, and recently this court has refused to hear the motion for a preliminary injunction, as I have stated. If the plaintiff in that case in New York had stated in his bill the agreements between Judson and Chaffee, and prayed for an injunction on the ground that the same had become void by reason of the non-performance on the part of Judson, then the circuit court in New York would have had the power to have made the same conditional order as was made in the cases already stated, and then upon the payment of the annuity by Judson, which was in arrear, the rights of Judson and Goodyear and his licensees would have continued. But the plaintiff did not choose to state anything about these agreements in his bill, in Connecticut, in New York, or in this district.

*     *     *     *     *     *     *

Whatever effect at law should be given to the letter of Judson, of June 23, 1853, and his authorizing Chaffee to draw upon him for the quarterly payments then due, I have always considered that, in equity, it should be considered as protecting the rights of Judson and Goodyear and his licensees, and that, until Chaffee had drawn for this amount (the usual way in which he had received payment), and payment had been refused, he had no right in equity to revoke, for the temporary withholding of these quarterly payments. On the trial at law, I was requested to instruct the jury, that after this letter of Judson, Chaffee had no right to revoke, but I did not do so because I did not consider, at law, that this authority to draw was equivalent to payment, not being a legal tender. And this is one of the questions embraced in the exceptions. But this motion for an injunction is addressed to a court of equity, and should be refused if upon equitable principles it ought not to be granted.

It was suggested by the counsel for the plaintiff on the argument of this motion before me, in reply to the argument on the other side, that equity would not aid to enforce a forfeiture; that it would be time enough to answer this argument when Mr. Judson or the defendants brought a bill to be relieved from the forfeiture. In the cases decided by Mr. Justice Nelson and Mr. Justice McLean, which have been cited, there was no bill filed by the licensee to be relieved from the forfeiture. But it was deemed sufficient by the learned judges, in those cases, that the complainant sought for an injunction, on the ground of forfeiture, to enable them to decree as they did, upon a bill which set forth the contract. And is the complainant in this case to protect himself by not stating the contract in his bill? Is he not bound to state all the facts known

to him in his bill? And if the patentee seeks for an injunction on the ground of an infringement, and states nothing about a contract which authorized the use, and such a contract by the answer appears, he must, by the rules and decisions of the supreme court of the United States, amend his bill before he can be allowed to impeach the contract, or go out of court. See the case of Piatt v. Vattier, 9 Pet. [34 U. S.] 415, 416, and the 45th of the equity rules of the supreme court.

If in a court of equity an absolute injunction would be refused upon a bill praying for an injunction, on the ground that the defendant had not performed the conditions of his contract, which authorized the use of a machine, but would allow the use upon the future fulfillment of his contract, and only a conditional injunction would be granted, is not this a good reason why a verdict, founded upon such a forfeiture, should not be considered as a sufficient reason to induce a court of equity to grant an absolute injunction? Having the whole case before me upon the evidence upon which it was tried at law, if I am not satisfied with the verdict, or if it presents a case in which in equity an absolute injunction should not be granted, then I ought not to grant it. It is true, these defendants are not parties to these agreements of September 5, 1850, and November 12, 1851, but I was of the opinion that under their agreement with the Shoe Associates and Judson, since the extension, the Shoe Associates having the exclusive right to use the Chaffee patent for the manufacture of boots and shoes, under the contract with Goodyear, previous to the extension, and under the agreement between Judson and Chaffee, since the extension, that the defendants had a right to use it in the manufacture of boots and shoes under the Shoe Associates, and by their license, to participate in their monopoly. But whether this be correct or not, the plaintiff has no right to recover in this case if the agreements between Judson and Chaffee are still subsisting. If, therefore, the evidence in the case at law, presents a case in which in equity an absolute injunction would not be granted, if the case had been properly presented there, then in this case such an injunction ought not to be granted, and the plaintiff should not derive any benefit from the fact that he has not chosen to state anything, in his bill, in relation to the agreements between Chaffee and Judson.

If on July 1, 1853, Chaffee had applied to a court of equity for an injunction against any of the licensees of Goodyear, who were using his patent under the agreement between Chaffee and Judson, on the ground of the non-payment of the sums stipulated to be paid him for such use, then he would have obtained an order for an injunction, unless payment of the amount in arrear was made, and the future payments continued, but the contract would have been held a subsisting contract and the rights of all parties under it preserved under such payment.

Mr. Chaffee did not choose to take this course. Acting by the advice of counsel, he treated this contract as forfeited at law for non-payment, he revoked it for non-payment, and sold and conveyed his patent to the plaintiff. It is admitted that the plaintiff has no more right under this conveyance than Chaffee had when he conveyed it; the plaintiff stands in the shoes of Chaffee. Is it in the power of Chaffee to vary his own rights, or the rights of Goodyear and his licensees under this agreement, in a court of equity, by making a revocation and a conveyance to the plaintiff, who frames his bill so as to treat the licensees of Goodyear as common infringers, and thus endeavors to obtain an absolute injunction against them; when, if Chaffee, or the plaintiff, had come into a court of equity, and had stated, in his bill, the whole case under this agreement, such an order would have been made as might have preserved the rights of all the parties under the contract, and insured its future performance? If a court of equity shall consider that this revocation ought not to have been made, and the contract treated as utterly void, then it will give no effect to the revocation, and the court, if it can not grant such an injunction under the bill, as, upon a performance in future, may preserve the rights of all the parties, it will at least refuse to grant an absolute injunction.

Whether, therefore, I consider the evidence and the law of this case in regard to the legal rights of the parties, or the relief which ought to be granted upon the proper presentation of such a case in equity, as the evidence on the trial at law presented, I can not grant the unconditional injunction which is asked for in this case. The motion of the plaintiff is denied, but without costs.

[NOTE. For other cases involving this patent, see note to Day v. Union India-Rubber Co., Case No. 3,691.]